***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

Nos. 04-1419 T & 05-1067 T

**(Judge Mary Ellen Coster Williams)**

K2 TRADING VENTURES, LLC,
NEW VISTA, LLC, TAX MATTERS PARTNER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**RESPONSE BY THE UNITED STATES TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE**

EILEEN J.O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
MICHAEL S. RAUM
STUART J. BASSIN
JENNIFER P. WILSON
Attorneys
U.S. Department of Justice (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 353-3922
(202) 514-9440

# TABLE OF CONTENTS

**Page**

Response by the United States to Plaintiffs' Motion *In Limine* to Exclude Testimony and Evidence. . . . . 1

Background. . . . . 2

Argument. . . . . 4

**I. The Testimony and Evidence Demonstrating That Taxpayers Developed, Promoted, and Executed The "Option Spread Transaction" Tax Shelter Is Relevant To Several Legal Issues in This Case**. . . . . 5

A. Numerous courts have found similar evidence of related transactions and the promotion of tax shelters to be probative in assessing the substance of transactions, and this Court should as well.. . . . . 8

B. The facts that will be established are relevant to legal issues in this litigation. . . . . 10

*1. The disputed evidence is relevant to show that the transactions at issue lack economic substance.* . . . . 10

*2. The disputed evidence is relevant to show that K2 Trading was a sham partnership..* . . . . 12

*3. The disputed evidence is relevant to show that each step of the transaction was prearranged and should not be viewed independently..* . . . . 14

C. It may be appropriate to defer ruling on the relevance of this evidence until trial.. . . . . 16

**Page**

**(Continuation):**

**II. THE EVIDENCE IS NOT UNDULY PREJUDICIAL AND WILL BE PROPERLY PRESENTED AT TRIAL.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**III. PLAINTIFFS' COMPLAINT ABOUT "OTHER EVIDENTIARY PROBLEMS" IS TOO GENERAL TO WARRANT A RESPONSE.** . . . . . . 21

**Conclusion**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**TABLE OF AUTHORITIES**

**Cases:**

*Andantech LLC v. Comm'r*, T.C. Memo 2002-97. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*ASA Investerings Partnership v. Commissioner*, 201 F.3d 505 (D.C. Cir. 2000), *cert.denied*, 531 U.S. 871 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Associated Wholesale Grocers, Inc. v. United States*, 927 F.2d 1517 (10th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Barrister Equip. Associates Series #115 v. Commissioner*, T.C. Memo 1994-2005. . . 4, 10

*Brannen v. Commissioner*, 78 T.C. 471 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brown v. Commissioner*, 85 T.C. 968 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Coltec Industrial, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006). . . . . . . . . . . . . 11

*Commissioner v. Clark*, 489 U.S. 726, 738 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Clark v. Tenn. Valley Elec. Co-op.*, 2002 WL 1397270, (W.D. Tenn. Apr. 2, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*PR Contractors, Inc. v. United States*, 69 Fed. Cl. 468 (2006). . . . . . . . . . . . . . . . . . . . . . 17

**Page**

**Cases (Continuation):**

*Cramer v. Sabine Transportation Co.*, 141 F. Supp. 2d 727 (S.D. Tex. 2001). . . . . . . . . 18

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). . . . . . . . . . . . . . . . 4

*Dewees v. Commisioner*, 870 F.2d 21 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Dietzsch v. United States*, 498 F.2d 1344 (1974).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Falconwood Corp. v. United States*, 422 F.3d 1339 (Fed. Cir. 2005). . . . . . . . . . 14, 15, 16

*Ferguson v. Commissioner*, 29 F.3d 98 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Freytag v. Commissioner*, 89 T.C. 849 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Greene v. United States*, 13 F.3d 577 (2d Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517 (5th Cir. 1981). . . . . . . . . . . . 18

*Jade Trading v. United States*, 65 Fed. Cl. 188 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Karme v. Commissioner*, 673 F.2d 1062 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*King Enterprises, Inc. v. United States*, 189 Ct. Cl. 466,
418 F.2d 511 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*Knetsch v. United States*, 364 U.S. 361 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kuper v. Commissioner*, 533 F.2d 152 (5th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Long Term Capital Holdings v. United States*, 330 F. Supp. 2d 122
(D. Conn. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . 4

*Merryman v. Commissioner*, 873 F.2d 879 (5th Cir. 1989).. . . . . . . . . . . . . . . . . . . . . . . 13

**Page**

**Cases (Continuation):**

*Schultz v. Butcher*, 24 F.3d 626 (4th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Security Industrial Insurance Co. v. United States*, 702 F.2d 1234 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sochin v. Commissioner*, 843 F.2d 351 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*True v. United States*, 190 F.3d 1165 (10th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Von Pein v. Hedstrom Corp.*, 2004 WL. 2191601 (N.D. Ill. Sept. 23, 2004). . . . . . . . . . 17

**Miscellaneous:**

Fed. R. Evid.:

401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

406. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

602. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

802. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

901. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No's 04-1419 T, 05-1067 T

(Judge Mary Ellen Coster Williams)

K2 TRADING VENTURES, LLC,
NEW VISTA, LLC, TAX MATTERS PARTNER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**RESPONSE BY THE UNITED STATES TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE**

Plaintiffs have moved *in limine* to exclude various categories of evidence, which they contend are "not relevant or [are] prejudicial and a waste of time." Plaintiffs' attempt to limit the evidence in this case to "the K2 Trading investors and their investment in K2 Trading" is myopic and ignores the context in which the promoters undertook the transactions at issue in this case. The reality is that the "K2 Trading investors" are tax shelter promoters who worked in coordination with BDO Seidman ("BDO") and others to develop, promote, and execute a tax shelter known as the "Option Spread Transaction," making millions of dollars in the process. The supposed "investment in K2 Trading" is simply an instance of this tax shelter, which all but one of these plaintiffs in fact executed twice.[1]

[1] The United States has articulated several legal principles which support disallowance of the transactions at issue, each of which is discussed in more detail in Section I, *infra*. However,

Nevertheless, plaintiffs seek to exclude all evidence that would provide the relevant factual context, because, they contend, it is not relevant, is unduly prejudicial, and would be a waste of time. (Plaintiffs' Motion at 5-9.) As explained below, plaintiffs' attempt to limit the evidence in this case is contrary to law. Most fundamentally, this evidence is relevant because it demonstrates what that the K2 Trading participants knew and intended. Mr. and Mrs. Van Boxel will testify, for example, that Ari Bergmann sold them the "Option Spread Transaction" as a tax shelter, rather than as an investment with incidental beneficial tax consequences, as Mr. Bergmann will characterize the K2 Trading transactions. Likewise, all of the other evidence at issue tends to show, in one way or another, the true nature of "the K2 Trading investors and their investment in K2 Trading." For that reason, this evidence is relevant and the Court should reject plaintiffs' effort to exclude it.

**BACKGROUND**

Plaintiffs are the promoters of a highly-abusive tax shelter creating artificial tax losses which is the subject of litigation in this Court in *Jade Trading, LLC v. United States* (No. 03-2164 T). Plaintiffs and their principals not only promoted and marketed this tax shelter to other taxpayers but also engaged in this strategy themselves in 1999, and again in 2000 and 2001. Like their tax shelter clients in *Jade Trading*, plaintiffs here seek to validate this tax strategy – specifically for transactions they engaged in 2000 and 2001.

The evidence at trial will demonstrate (among other facts) that the "Option Spread Transaction" tax shelter (also known by other names) has the following essential steps –

---

each of these principles is an occasion for the Court to consider whether the transactions at issue were a prearranged tax shelter.

1. The taxpayer simultaneously purchases and sells foreign currency options that almost perfectly offset each other;

2. The taxpayer transfers the offsetting options to an entity taxed as a partnership; and

3. The taxpayer withdraws from the nominal partnership, receiving foreign currency and/or stock in return for his partnership interest.

The United States will offer evidence to demonstrate that the taxpayers performed each of the required steps – acquisition of virtually offsetting foreign currency options; contribution of the offsetting options to K2 Trading; and redemption of their partnership interests in return for foreign currency and/or stock. Indeed, the steps undertaken by taxpayers are identical in structure and execution to the steps of the "Option Spread Transaction" tax shelter as designed and executed by Ari Bergmann in coordination with BDO and others on behalf of numerous customers, including the Van Boxels, and by the promoters themselves.

This evidence will be crucial in addressing what plaintiffs have identified as the "key factual question" in this case – the taxpayers' subjective intent. (Plaintiffs' Motion at 2.) Plaintiffs contend that the taxpayers were motivated by investment objectives. (*Id*. at 2.) The evidence offered by the United States will demonstrate that the taxpayers did not undertake a rational investment at all; rather, they executed the precise steps required to generate purported tax benefits according to the design of the tax shelter they developed and promoted in coordination with BDO.[2] Moreover, the evidence will demonstrate that the taxpayers knew and

---

[2] Plaintiffs emphasize the fact that only one of the taxpayers has "ever reported any amount of tax benefits related to the investment in K2 Trading." (Plaintiffs' Motion at 2, 6.) This ignores the fact that the taxpayers used the "Option Spread Transaction" tax strategy in 1999, through an entity called Asuma Trading Ventures to offset their sizable tax shelter income. In this case, plaintiffs ask the Court to bless their future use of the paper losses they created by use of the same strategy in 2000 and 2001, through K2 Trading. Indeed, plaintiffs correctly

understood the steps of the transaction required to create a tax shelter, and indeed were instrumental in developing, marketing, and executing the tax shelter for numerous customers.

**ARGUMENT**

Under Federal Rule of Evidence 402, all relevant evidence is admissible (except as otherwise provided by federal law or the Federal Rules of Evidence). Rule 401, in turn, defines relevant evidence to be any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Rule 401 standard is intended to be liberal and favors the admission of evidence.[3] Trial courts have "substantial discretion in determining the evidence to be admitted," so long as the evidence is "of consequence to the determination of the action.[4]" Thus, the question for the Court is whether the evidence addressed by plaintiffs' motion makes more probable the existence of any fact of consequence in this case. Plaintiffs' motion to exclude evidence should be denied because plaintiffs have not established that the evidence at issue is not relevant under the liberal Rule 401 standard.

---

stated in their pretrial memorandum that "this litigation is generally about their right to claim such [tax] benefits when the property distributed from the partnership is sold at some point." (Plaintiffs' Mem. at 3.) Moreover, the fact is that one of the plaintiffs has indeed claimed tax benefits in connection with K2 Trading.

[3]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993); *see also Barrister Equip. Associates Series #115 v. Commissioner*, T.C. Memo. 1994-2005.

[4]*See Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 961 (Fed. Cir. 1997).

## I.

## THE TESTIMONY AND EVIDENCE DEMONSTRATING THAT TAXPAYERS DEVELOPED, PROMOTED, AND EXECUTED THE "OPTION SPREAD TRANSACTION" TAX SHELTER IS RELEVANT TO SEVERAL LEGAL ISSUES IN THIS CASE

Plaintiffs' motion addresses several categories of evidence. The evidence includes the testimony of various witnesses related to BDO, including Charles Bee, R. Richard Brown, and Lawrence Cohen, as well as the *Jade Trading* trial transcripts of David DiMuzio, Denis Field, and Charles Bee; the testimony of Bob LaVallee, Greg Van Boxel, and Lori Van Boxel (the "Van Boxels"); other transcripts of testimony from *Jade Trading*, including that of Ann Reed and Sheldon Pang of AIG International ("AIG") and William Bricker of the law firm of Curtis, Mallet-Prevost, Colt & Mosle ("Curtis Mallet"); and evidence purportedly unrelated to the transactions at issue in this case (including defendant's exhibits 183-185, 187-213, 217-226, 227-235).[5] Plaintiffs fail to recognize the connection between this evidence and the issues in this case. In fact, the testimony and exhibits addressed by plaintiffs' motion all relate to the "Option Spread Transaction" tax shelter, either in its generic form as it was developed by Sentinel and BDO for promotion to customers or as it was executed on behalf of specific customers like the Van Boxels.

Specifically, the testimony of the BDO Witnesses will demonstrate that the participants in the K2 transaction – all of whom are principals or employees of Sentinel Advisors and New

---

[5] With respect to the exhibits addressed by plaintiffs' motion, plaintiffs indicate that the list of exhibits may not be exhaustive. The United States cannot respond to objections to exhibits that have not been identified. Accordingly, if plaintiffs identify additional defendant's exhibits to which their motion relates, the United States may request permission to file a supplemental response.

Vista (with the exception of Srini Conjeevaram, who is the spouse of Sentinel principal Smita Conjeevaram) – developed the "Option Spread Transaction" tax shelter in coordination with BDO, promoted the tax shelter to customers personally and explained the tax benefits that the shelter purportedly generates, and executed the steps of the tax shelter on behalf of customers who desired the tax benefits that the shelter is designed to generate. In addition, Lawrence Cohen and Charles Bee will testify that Ari Bergmann and Charles Bee negotiated a reduced fee for BDO to prepare opinion letters for the members of K2 Trading in October 2000, about three months after the purported partnership was formed.

The testimony of the Van Boxels will be offered to demonstrate that Ari Bergmann, in coordination with BDO, promoted the "Option Spread Transaction" tax shelter to them in 1999. They will testify that Ari Bergmann and Smita Conjeevaram explained the purported tax benefits with them during the promotion of the tax shelter, and that the Van Boxels were required to complete the required steps of the transaction prior to the end of 1999 in order to claim the purported tax losses in 1999. In addition, Mr. LaVallee will testify that each of the steps of the transaction, including the Van Boxels' withdrawal from their purported partnership, were done at the instigation of Smita Conjeevaram.[6]

---

[6]Contrary to plaintiffs' assertion (at page 7 of their motion), the BDO Witnesses and the Van Boxels have "personal knowledge of the matter[s]" about which they will testify. Federal Rule Evidence 602 requires only that "'a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact'." Advisory Committee Note to Fed. R. Evid. 602 (citations omitted). The United States will satisfy this foundational requirement through the testimony of the witnesses themselves, as is permitted, with respect to the factual matters about which these witnesses will testify. *Id*. Plaintiffs' argument that these witnesses have no personal knowledge of the specific transactions at issue in this case and the intent of the K2 "investors" in making their "investment" (at page 7 of their motion) is no more than a reiteration of their relevance objection and has no bearing on the Rule 602 analysis.

The United States will offer excerpts of testimony and exhibits admitted during the testimony for the following witnesses who testified in *Jade Trading*: Charles Bee, William Bricker, David DiMuzio, Denis Field, Sheldon Pang, and Ann Reed. The testimony excerpts of Bee, Bricker, DiMuzio, and Field will be offered to demonstrate the development, marketing, and execution of the "Option Spread Transaction" tax shelter by Sentinel in conjunction with BDO, Curtis Mallet, and AIG. In addition, the prior testimony of Pang and Reed, former and current employees of AIG, will be offered to establish that the fees paid to AIG by customers of Sentinel and the participants in the K2 transaction are unusual.[7] The United States will not offer any prior testimony about the specific transactions engaged in by the Ervin brothers that are at issue in *Jade Trading*.

Finally, the United States will offer defendant's exhibits 183-185, 187-204, 217-235 during the testimony of the BDO Witnesses and the participants in K2 Trading to establish that there was an "Option Spread Transaction" tax shelter; to demonstrate the role played by Ari Bergmann and Smita Conjeevaram in the development and marketing of the "Option Spread Transaction" tax shelter; and to demonstrate the K2 participants' awareness of the purported tax benefits associated with this shelter. Defendant's exhibits 205-213 will be offered during the testimony of the Van Boxels to establish how the principals of Sentinel promoted the "Option Spread Transaction" tax shelter to the Van Boxels and that the Van Boxels executed the required steps and paid the required fees at the instruction of Sentinel primarily.

---

[7] Ann Reed and Sheldon Pang have been listed by plaintiffs as witnesses for trial.

### A. Numerous courts have found similar evidence of related transactions and the promotion of tax shelters to be probative in assessing the substance of transactions, and this Court should as well.

Courts have admitted evidence of related transactions in tax shelter cases where, as here, the Government questions the substance of the transactions. For example, in *Sochin v. Commissioner*, the taxpayers argued that the Tax Court improperly considered evidence of other investor transactions involved in the same investment program when it disallowed losses and expenses deducted by taxpayers with respect to investments in a tax shelter involving straddle transactions and forward contracts.[8] In affirming the Tax Court's finding that the transactions lacked substance, the Ninth Circuit concluded:

> . . .[A]t least part of the sham analysis focuses on the "economic substance" of the transaction; *i.e.* whether it was "likely to produce economic benefits aside from a tax deduction." A consideration of the entire investment program directly relates to the analysis of Taxpayers' probable economic benefits. It is also directly relevant to the court's assessment of Taxpayers' credibility with respect to their assertions of a non-tax based motive.[9]

Similarly, in *Dewees v. Commissioner*, addressing whether losses resulting from silver trading were a sham in substance, the First Circuit concluded that the Tax Court properly examined evidence of 1,100 similar cases.[10] The court held that the Tax Court was "free to draw reasonable conclusions from the general pattern of transactions before it. The basic pattern is . . . one designed to produce tax gains; it is not designed to produce real gains."[11] In addition, this

---

[8]843 F.2d 351 (9th Cir. 1988) (*affirming Brown v. Commissioner*, 85 T.C. 968 (1985)), *cert. denied,* 488 U.S. 824 (1988) (internal citations omitted).

[9]*Sochin*, 843 F.2d at 355.

[10]870 F.2d 21, 31 (1st Cir. 1989).

[11]*Id.*

Court held in *Jade Trading* (albeit in a discovery context) that tax return information of other taxpayers was potentially relevant to determining the proper tax treatment of a taxpayer.[12] The Court stated:

> the amount and dates of capital gains and losses recognized by the nonparty taxpayers in 1999-2000 are potentially relevant to the Government's contention that the activity engaged in by the Ervins and others who participated in this type of transaction, was unlike typical marketplace transactions. Thus, the subpoenaed taxpayer information is relevant for discovery purposes.[13]

In this case, the evidence of other related transactions discussed in the preceding pages is relevant both to prove that plaintiffs' purported investments were not economically rational and that their asserted investment purposes for entering into the offsetting options and contributing the offsetting options to K2 Trading are not credible. Courts have found precisely this kind of "pattern evidence" to be relevant in tax shelter litigation.

Courts have also admitted promotional materials in order to demonstrate the true nature and purpose of a purported investment strategy. In *Dewees*, for example, the First Circuit found that promotional materials advertising the investment as an "income conversion and deferral program" and identifying the intended tax benefits were properly considered whether or not the taxpayers actually received the promotional materials because they "provided evidence of the general nature and purpose of the trading strategy, especially since the results of the actual transactions so closely mirror the promoters' claims."[14] The evidence of promotional and

---

[12] *Jade Trading v. United States*, 65 Fed. Cl. 188 (2005).

[13] *Id.* at 191 (footnote omitted).

[14] *Dewees*, 870 F.2d at 31; *see also Brannen v. Commissioner*, 78 T.C. 471 (1982), *aff'd*, 722 F.2d 695 (11th Cir. 1984) (admitting evidence of 19 similar partnerships, which all had the same mailing address, were operated by one individual, and were marketed through flip charts

marketing materials discussed above is likewise relevant to establish that the plaintiffs' motivation in entering into the offsetting options and contributing them to K2 Trading was to obtain tax benefits, not investment profits.

Similarly, in *Karme v. Commissioner*, the Ninth Circuit concluded that the Tax Court properly admitted the testimony of former employees or associates of the taxpayer's attorney pursuant to Federal Rule of Evidence 406 – even though the testimony did not relate to the particular transaction at issue – because the testimony "tend[ed] to establish a pattern or practice of tax planning of which this transaction was a part."[15] In this case, the evidence demonstrating that plaintiffs promoted the "Option Spread Transaction" tax shelter to customers and executed the steps of the shelter on behalf of their customers, including the Van Boxels, tends to establish a pattern or practice of tax planning in which offsetting options are purchased outside of a partnership and contributed to a partnership in order to generate an artificially high tax basis. The United States will establish that the transactions at issue in this case are, without question, consistent with this pattern or practice of tax planning.

**B. The facts that will be established are relevant to legal issues in this litigation.**

*1. The disputed evidence is relevant to show that the transactions at issue lack economic substance.*

The economic substance doctrine requires courts to disregard transactions that are

---

presenting the financial and tax aspects of the program); *Barrister Equip. Associates Series #115 v. Commissioner*, T.C. Memo. 1994-2005 (finding evidence of activities of shelter promoter and his controlled and affiliated entities relevant to whether the transactions at issue had economic substance and were entered into with a profit objective); *Freytag v. Commissioner*, 89 T.C. 849, 860 (1987) (considering the dealings between the tax shelter promoter and all of its customers).

[15] 673 F.2d 1062, 1064 (9th Cir. 1982).

invented solely to create tax deductions and otherwise have no economic substance, even though formally complying with the letter of the Internal Revenue Code.[16] The Federal Circuit has held that economic substance must be evaluated objectively, not subjectively.[17] However, as explained in our pretrial memorandum (at pages 23-24), the Federal Circuit also stated that a taxpayer's subjective motivation may be a pertinent factor in the inquiry.[18]

As to objective economic substance, the evidence will demonstrate several important points. In particular, it is relevant to the objective economic substance inquiry that the transaction was structured in a way inconsistent with market norms. The evidence of other related transactions undercuts plaintiffs' claim that the structuring was for any purpose other than to generate artificial tax losses. For example, there is an issue in this case about reasonable profit potential in light of the fees paid to AIG. The Van Boxels will testify that the AIG fee (in addition to the other fees that they were required to pay) were calculated as a percentage of the total tax losses that the tax shelter was designed to generate. In addition, plaintiffs contend that they structured their offsetting foreign currency options to have large face values and narrow strike price differentials for an idiosyncratic investment purpose – to benefit from a directional move in the foreign currency. However, Defendant's Exhibits 197, 199, 201-204, and 224, in addition to the testimony of Lawrence Cohen, will demonstrate that the goal was to generate a large amount of basis on the long option for tax purposes, and that the purported investment purpose was created after the fact in order to provide "business purpose" window dressing for

---

[16] *Knetsch v. United States*, 364 U.S. 361, 365-69 (1960).

[17] *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1356 (Fed. Cir. 2006).

[18] *Id.* at 1355-56, n.14.

this tax shelter. Finally, the evidence will show that the only reason for the plaintiffs' theoretical possibility of profit was that they did not charge themselves the fees that they routinely charged customers executing the "Option Spread Transaction."

As to subjective economic substance, the United States will offer evidence to rebut several of plaintiffs' claimed business purposes. Most fundamentally, plaintiffs claim to have undertaken the transactions at issue for rational investment purposes. The evidence offered by the United States will demonstrate that the taxpayers did not undertake a rational investment at all; rather, they executed the precise steps required to generate purported tax benefits according to the design of the tax shelter they developed and promoted in coordination with BDO. Moreover, the evidence – including Defendant's Exhibits 183-185, 187-194, 208, 210-211, 217-221, 223-226 – will demonstrate that the taxpayers knew and understood the steps of the tax shelter, and indeed were instrumental in developing, marketing, and executing the tax shelter for numerous customers. For example, the Van Boxels will testify that the required steps of the tax shelter and the intended tax consequences were presented to them on several occasions by Ari Bergmann and Smita Conjeevaram, in addition to employees of BDO. Indeed, they will testify that, as a part of this explanation, Ari Bergmann and Smita Conjeevaram provided them with a presentation detailing the steps and intended tax results (listed as Defendant's Exhibit 213).

*2. The disputed evidence is relevant to show that K2 Trading was a sham partnership.*

Applying economic substance principles, courts refuse to recognize a sham entity for tax purposes "if it is fictitious or if it has no business purpose . . . other than the creation of tax

deductions."[19] In such cases, the "basic inquiry . . . [is] . . . whether, all facts considered, the parties intended to join together as partners to conduct business activity for a purpose other than tax avoidance," and "*the absence of a nontax business purpose is fatal.*"[20] In conducting its sham entity analysis, the Court's inquiry is fundamentally objective, focusing on whether the partnership actually served any business needs or whether it was "essentially wasteful activity," the only purpose of which was tax savings.[21]

Relevant to this inquiry, the United States will demonstrate that the promoters of the "Option Spread Transaction" tax shelter, as early as the design stage, manufactured a laundry list of alleged business purposes for the contribution of offsetting options to a purported partnership managed by plaintiffs. The United States will meet each of these purported business purposes on the merits and show them to be implausible through expert testimony and cross examination. However, the evidence at issue in this motion will help the Court evaluate the credibility of plaintiffs' purported business purposes for contributing the offsetting options. This evidence, including marketing materials and testimony, will show that each customer who purchased offsetting options through plaintiffs contributed them to a partnership and that this contribution was the key step in generating the high basis the shelter was designed to create. Moreover, this evidence will demonstrate that each partnership had no non-tax business purpose, and that the contributions of the offsetting options to the partnerships had no non-tax business purpose.

---

[19] *Ferguson v. Comm'r*, 29 F.3d 98, 101 (2d Cir. 1994) (citations omitted); *accord Merryman v. Comm'r*, 873 F.2d 879, 881 (5th Cir. 1989).

[20] *ASA Investerings v. Comm'r*, 201 F.3d 505, 512-13 (D.C. Cir. 2000) (emphasis added).

[21] *ASA Investerings*, 201 F.3d at 512-517.

3. *The disputed evidence is relevant to show that each step of the transaction was prearranged and should not be viewed independently.*

The step transaction doctrine is "a judicial manifestation of the more general tax law ideal that effect should be given to the substance, rather than the form, of a transaction, 'by ignoring for tax purposes, steps of an integrated transaction[.]'"[22] "The [step transaction] doctrine treats the steps in a series of formally separate but related transactions involving the '*transfer of property'* as a single transaction, if all the steps are substantially linked. Rather than viewing each step as an isolated incident, the steps are viewed together as components of an overall plan."[23] Thus, under the step transaction doctrine, "interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction."[24]

The doctrine has three tests—(1) the "end result" test; (2) the "interdependence" test; and (3) the "binding commitment" test, which "may have different meanings in different contexts" and apply differently to different substantive provision of the Code.[25] Two apply here: the interdependence test and the end result test.

First, the interdependence test focuses on the relationship between the steps that a taxpayer has taken, examining whether they "were so interdependent that the legal relations

[22] *Falconwood Corp. v. United States*, 422 F.3d 1339, 1349 (Fed. Cir. 2005) (internal citations omitted) (*citing Dietzsch v. United States*, 498 F.2d 1344, 1346 (1974)); *see also King Enters., Inc. v. United States,* 418 F.2d 511, 516 n6 (1969)).

[23] *Long Term Capital Holdings v. United States*, 330 F. Supp. 2d 122, 191 (D. Conn. 2004) (*citing Greene v. United States,* 13 F.3d 577, 583 (2d Cir. 1994)) (emphasis added).

[24] *Falconwood,* 422 F.3d at 1349 (*quoting Comm'r v. Clark*, 489 U.S. 726, 738 (1989)).

[25] *See, e.g., Falconwood*, 422 F.3d at 1349-50.

created by one transaction would have been fruitless without a completion of the series."[26] Application of the test is "especially proper where . . . it is unlikely that any one step would have been undertaken except in contemplation of the other integrating acts . . . ."[27] Courts applying this test have examined whether each of the steps under scrutiny had a "reasoned economic justification standing alone."[28] Any step which lacks such a justification is a candidate for elimination under the step transaction doctrine.[29]

Here, the evidence will show that K2 Trading is merely one instance of a cookie-cutter tax shelter, in which the transfer of offsetting options to a purported partnership is an essential step. The evidence on this point will include the testimony of Lawrence Cohen and of the taxpayers, in addition to Defendant's Exhibits 195, 201-204, 213, and 217-222. This fact supports the United States' contention that the plaintiffs would not have embarked on this transaction – by purchasing the offsetting options – unless they intended to contribute them to a partnership in order to generate tax benefits. If the Court so finds, the result would be to disregard the steps lacking economic justification standing alone, resulting in disallowance of the tax benefits.

Second, the end result test applies when separate transactions were "really component parts of a single transaction intended from the outset to be taken for the purpose of reaching the

---

[26] *Id.* at 1349 (*citing King Enters.,* 418 F.2d at 516); *see also Associated Wholesale Grocers, Inc. v. United States*, 927 F.2d 1517, 1523 (10th Cir. 1991).

[27] *Kuper v. Comm'r*, 533 F.2d 152, 156 (5th Cir. 1976).

[28] *Security Indus. Ins. Co. v. United States*, 702 F.2d 1234, 1247 (5th Cir. 1983).

[29] *See*, *e.g., True v. United States*, 190 F.3d 1165, 1168-69 (10th Cir. 1999).

ultimate result."[30] When the test is met, "purportedly separate transactions will be amalgamated into a single transaction[.]"[31] Subjective intent "is especially relevant . . . because it allows [a court] to determine whether the taxpayer directed a series of transactions to an intended purpose."[32]

Here, the evidence adduced at trial (including Defendant's Exhibits 195, 201-204, 213, and 217-222) will show each of the three basic steps of the "Option Spread Transaction" were scripted in advance by plaintiffs and BDO and were integral components of a carefully devised overall plan. The evidence of other related transactions will demonstrate how that plan was actually executed at the direction of plaintiffs and BDO. Specifically, the Van Boxels will testify that after they made the determination to enter into the transaction, the timing, sequence, and substance of all of their subsequent actions was at the direction of Sentinel and BDO. Moreover, the evidence will demonstrate that K2 Trading is simply an example of this prearranged tax shelter plan; that is, the key steps taken by plaintiffs were identical to the steps contemplated by the design of the tax shelter and those executed on behalf of customers. If the Court makes these findings of fact, then it need not respect the individual steps which comprise the overall tax shelter plan.

**C. It may be appropriate to defer ruling on the relevance of this evidence until trial.**

This Court and others have observed that there is great difficulty in ruling on the

---

[30] *Falconwood*, 422 F.3d at 1349.

[31] *King Enterprises*, 418 F.2d at 516.

[32] *True*, 190 F.3d at 1175-78 (citations omitted); *see also Andantech LLC v. Comm'r*, T.C. Memo 2002-97 ("[E]very step taken by the parties . . . were but transitory steps.").

relevance of testimony and exhibits at issue before trial. Indeed, this Court recently denied a motion *in limine* without prejudice because "the challenged exhibits and testimony are best evaluated in the context of a trial after Plaintiff has attempted to lay a foundation for their admissibility," and noted:

> A motion *in limine* is a preliminary motion that serves a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly would be inadmissible for any purpose. Because of the preliminary nature of such motions, "[r]uling on motions in limine . . are subject to change as the case unfolds." Thus, while ["t]he prudent use of the motion *in limine* sharpens the focus of later trial proceedings and permits the parties to focus their presentation on those matters that will be considered . . . [s]ome evidentiary submissions cannot be evaluated accurately or sufficiently by the trial judge in such a procedural environment.[33]

For this reason, the Court may wish to defer ruling until these evidentiary issues are raised in context during trial.[34]

[33] *PR Contractors, Inc. v. United States*, 69 Fed. Cl. 468, 469-70 (2006) (citations and footnote omitted); *see also Von Pein v. Hedstrom Corp.*, 2004 WL 2191601 (N.D. Ill. Sept. 23, 2004) ("A district court should be mindful that some proposed evidentiary submissions cannot be accurately evaluated in a pretrial context via a motion *in limine*. For this reason, certain evidentiary rulings should be deferred to trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.); *Clark v. Tenn. Valley Elec. Co-op.*, 2002 WL 1397270, at *2 (W.D. Tenn. Apr. 2, 2002) (suggesting that objections to certain evidence are more appropriate for evaluation during trial).

[34] It would be particularly difficult for the Court to rule on the relevance of the exhibits that plaintiffs seek to exclude because plaintiffs have neither provided copies of the exhibits to the Court nor described them with any particularity. Making a relevance determination in the absence of factual context is difficult enough, but it is made virtually impossible without the opportunity to review the actual exhibits at issue.

## II.

## THE EVIDENCE IS NOT UNDULY PREJUDICIAL AND WILL BE PROPERLY PRESENTED AT TRIAL

Plaintiffs argue that they will be "prejudiced by the distraction caused by the presentation of any of this, at best, minimally relevant" evidence at trial. (Plaintiffs' Motion at 7.) Plaintiffs' argument is misplaced in this case which will be tried to the Court rather than a jury. In the context of a bench trial, there is no need to ensure the jury is not misled because the court is both the gatekeeper and fact finder. Indeed, courts have expressly held that motions *in limine* based on undue prejudice are inappropriate in bench trials: "[I]n the context of a bench trial, evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial."[35] The Fifth Circuit has written that "Rule 403 has no logical application to bench trials . . . . Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity."[36] With respect to evidence that is admitted during trial, plaintiffs will be free to argue in post-trial briefing that the evidence should be accorded little weight or no weight based on the same arguments they may have with respect to prejudice. Therefore, the Court should reject out of hand any argument that this relevant evidence is unduly prejudicial.

In any event, plaintiffs' prejudice argument is unavailaing. First, there is no truth to

---

[35] *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994); *see also Cramer v. Sabine Transportation Co.*, 141 F. Supp. 2d 727, 733 (S.D. Tex. 2001) ("Motions *in limine* are intended to prevent allegedly prejudicial evidence from being so much as whispered before a jury prior to obtaining the Court's permission to broach the topic. In a bench trial, such procedures are unnecessary, as the Court can and does readily exclude from its consideration inappropriate evidence of whatever ilk").

[36] *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981).

plaintiffs' assertion that the evidence at issue is only "minimally relevant." As explained in Section I, *supra*, the evidence at issue is relevant to at least three central legal issues in this case and easily meets the Rule 401 standard for relevance. Second, the probative value of this evidence is not "substantially outweighed by the danger of unfair prejudice" as is required to exclude relevant evidence under Federal Rule of Evidence 403. Plaintiffs assert only that they would be prejudiced by the "distraction" caused by the presentation of this evidence. This objection is so vague as to render it meaningless.

Indeed, the only concrete prejudice argument raised by plaintiffs is with respect to the Van Boxels. They assert that because the Van Boxels have sued New Vista and some members of Sentinel Advisors for providing erroneous tax advice, their "presence in this case is merely a further example of their misdirected anger at New Vista." This argument, too, is misplaced. The fact that the Van Boxels have brought suit against plaintiffs does not effect the relevance of their testimony – which is detailed in Section I, *supra* – nor does it render their relevant testimony unfairly prejudicial. If the Van Boxels' litigation against plaintiffs has any significance in this case, it is only with respect to their credibility. The Court, as fact finder, will be required to assess the credibility of the Van Boxels and all of the other witnesses at trial.

Finally, plaintiffs object on the ground that the introduction of the evidence at issue will lead to a "trial within a trial." (Plaintiffs' Motion at 9.) Once again, plaintiffs are incorrect. As outlined above, the evidence at issue is offered to establish that Ari Bergmann, in coordination with BDO and others, designed and sold these transactions not to make money, but to produce tax losses. There is no need for mini trials because the evidence is offered to show only the objective form of the transactions and the awareness and subjective intent of plaintiffs – not the

subjective intent of other taxpayers. In short, the evidence is offered for exactly the purpose identified by plaintiff as the central issue in this case – "to confirm the motives of the K2 trading investors and their investment in K2 Trading." (Plaintiffs' Motion at 9.) Moreover, most of the evidence at issue will come before the Court naturally, during the examinations of BDO and Sentinel employees already on the witness lists. Its admission will not significantly delay the trial, and it certainly will not require dozens of collateral mini trials, as plaintiffs suggest.

The United States notes that despite plaintiffs' protestation about unnecessarily prolonging this trial with purportedly irrelevant evidence unrelated to K2 Trading, they have listed on their exhibit list multiple exhibits regarding investments and partnerships that bear no relation to K2 Trading.[37] In their reply brief to the pretrial memorandum of the United States, plaintiffs discuss this evidence, stating that they have "produced information regarding a number of other investment partnerships that the members of K2 invested in together – involving a range of private equity and other investment purposes."[38] Plaintiffs argue that this evidence will establish that the transaction at issue in this case "were no more the product of pre-planned steps as alleged by the government than existed in any other partnership involving these same members."[39] Plaintiffs apparently contend that their evidence (which by their own standard is unrelated to K2 Trading) offered for the purpose of proving that the transactions at issue were undertaken for investment purposes should be admitted, but the evidence offered by the United

[37]*See, e.g.*, Plaintiffs' Exhibits 22-27, 40-58, 133-135, 172-175, 188-191, 214-217, and 289-303.

[38]Reply to United States' Pretrial Mem. at page 6.

[39]*Id.*

States to prove the converse will take too much time to present and should be excluded. Plaintiffs' attempt to restrict the evidence to only that which favors their view of the case should be rejected.

**III.**

**PLAINTIFFS' COMPLAINT ABOUT "OTHER EVIDENTIARY PROBLEMS" IS TOO GENERAL TO PERMIT A RESPONSE**

Plaintiffs argue that the evidence addressed in their motion is inadmissible hearsay under Federal Rule of Evidence 802 and lacks the authentication necessary to satisfy Federal Rule of Evidence 901. (Plaintiffs' Motion at 9.) Plaintiffs do not specify which testimony and/or exhibits are covered by this objection, nor do they explain their argument in any detail. Because plaintiffs' argument is so general, the United States cannot formulate a response. However, the United States will respond to these objections if/when plaintiffs provide the needed clarification.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion to exclude evidence which is relevant to the central legal issues in this case. In the alternative, the Court should defer ruling on plaintiffs' motion until the United States offers the evidence at trial, when the Court can make evidentiary rulings in light of the factual context in which the evidence is offered.

Respectfully submitted,

s/Michael S. Raum
MICHAEL S. RAUM
Attorney of Record
U.S. Department of Justice
Tax Division
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 353-3922

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STUART J. BASSIN
Senior Litigation Counsel
JENNIFER P. WILSON
Trial Attorney
JOSEPH B. SYVERSON
Trial Attorney

s/David Gustafson
Of Counsel

September 25, 2006