IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| K2 TRADING VENTURES, LLC, NEW VISTA, LLC, TAX MATTERS PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Nos. 04-1419T, 05-1067T<br>Judge Mary Ellen Coster Williams |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE HELMER/CRAM MEMORANDUM**

**INTRODUCTION**

Plaintiff, New Vista, LLC, the tax matters partner of K2 Trading Ventures, LLC ("K2 Trading"), respectfully opposes the Defendant's motion in limine filed on September 8, 2006 with respect to the so-called "Helmer/Cram Memorandum."[1] As explained below, the Helmer/Cram Memorandum is admissible because it is relevant to at least one of the issues present in this case and does not constitute hearsay (or falls within an exception to the hearsay rule).

**ARGUMENT**

I. The Helmer/Cram Memorandum Is Relevant

During the trial in Jade Trading, LLC v. United States, No. 03-2164T, this Court overruled defendant's objections to the admissibility of the Helmer/Cram

[1] The Helmer/Cram Memorandum is identified as Exhibit No. 360 on Plaintiff's original exhibit list included with Plaintiff's pretrial memorandum filed on July 28, 2006. This document was also addressed by the Court in Jade Trading, LLC v. United States, No. 03-2164T (plaintiff's exhibit 201, which was admitted into evidence on September 8, 2006).

Memorandum on the basis that it was relevant. See also Marriott International Resorts v. United States, 61 Fed. Cl. 411, 416 (2004) (holding that Internal Revenue Service documents evidencing the government's formulation of the definition of "liability" in regulations and Revenue Rulings 88-77, 1988-2 C.B. 129, and 95-26, 1995-1 C.B. 131, were relevant). The Defendant nevertheless contends in its motion in limine that the Helmer/Cram Memorandum is "not relevant to any issue in this case." Def.'s Mot. at 5.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. One fact that is of consequence in this case is whether, for purposes of the negligence penalty which has been asserted by the government, the investors in K2 Trading had a reasonable basis for their positions (to the extent any such positions have been reported on any tax returns) that sold call options were not liabilities within the meaning of Section 752 of the Internal Revenue Code of 1986, as amended.[2]

Under Sections 6662(a) and (b)(1), the Commissioner can impose a penalty on any portion of an underpayment of tax that is attributable to negligence. "Negligence" is defined to mean a failure to make a reasonable attempt to comply with the internal revenue laws or to exercise ordinary or reasonable care in preparing a tax return. Treas. Reg. § 1.6662-3(b)(1). A taxpayer is not negligent if there is a reasonable basis for the position giving rise to the asserted underpayment. Id. The reasonable basis standard exceeds the "not frivolous" and "not patently improper" standards. Treas. Reg.

---

[2] This penalty is being asserted by the government even though to date only one of the ten members of K2 Trading has ever reported any tax benefits relating to the transactions at issue in this case.

§ 1.6662-3(b)(3). Positions that are merely arguable or colorable are not supported by a reasonable basis. Id.

The Helmer/Cram Memorandum demonstrates that the investors in K2 Trading had a reasonable basis to conclude during 2000 and 2001 that sold call options were not liabilities for purposes of Section 752.[3] (The Helmer/Cram Memorandum is not being offered to establish that the investors relied on such document for purposes of the reasonable cause defense.)[4] Repeatedly, the Helmer/Cram Memorandum acknowledges that Helmer v. Commissioner, 34 T.C.M. (CCH) 727 (1975), represented the Internal Revenue Service's understanding of the state of the law with respect to contingent obligations under Section 752. See, e.g., Helmer/Cram Memo at 10810 (noting that a conclusion that an option is a liability for purposes of Section 752 would be "at odds with Helmer" and that the issuance of such a rule would require "overruling a case"); Helmer/Cram Memo at 10811 (stating that the Internal Revenue Service would "need [a]

---

3 See Jade Trading, LLC v. United States, 65 Fed. Cl. 487, 492-493 (2005) (ruling in motion to compel that "[t]hese documents [including the Helmer/Cram Memorandum] could also aid in determining the reasonableness of the position adopted by Plaintiffs in their tax returns, namely, that they did not need to book a contingent obligation as a liability to reduce their tax basis in the partnership. As such, these documents could be relevant to determining the validity of Plaintiffs' challenge to the asserted penalties.").

4 Asserting a "reasonable basis" position under Treas. Reg. § 1.6662-3(b)(1) is not the same as asserting the "reasonable cause" defense under Section 6664(c) and Treas. Reg. § 1.6664-4. The reasonable cause defense can be invoked once it has been determined that there is an underpayment of tax attributable to negligence. I.R.C. § 6664(c)(1); Treas. Reg. § 1.6664-4(a). The defense requires a showing that there was reasonable cause for the underpayment, such as, for example, reasonable reliance on the advice of a tax advisor, and that the taxpayer acted in good faith with respect to the underpayment. Treas. Reg. § 1.6664-4(a), (c). Reasonable cause of the investors is not an issue in this case pursuant to the stipulation filed with the Court on April 28, 2006. The investors reserved the right, however, to assert the reasonable cause defense in separate partner-level proceedings, if necessary. We note that the question of whether the reasonable cause defense may be invoked in a partnership-level proceeding is before the Court in Jade Trading, LLC v. United States, No. 03-2164T.

regulation to overrule Helmer" and that "existing authority is contrary to a position that options create liabilities").

At the time that K2 Trading was formed, the definition of liability for purposes of Section 752, and the law relating to that definition, was the same as that set forth in the Helmer/Cram Memorandum. The Internal Revenue Service did not change the definition of liability until June 24, 2003 -- more than one and a half years after K2 Trading dissolved. See Treas. Reg. § 1.752-1; Definition of Liabilities Under Section 752 of the I.R.C., 68 Fed. Reg. 37, 434, at 37, 436.[5]

The Helmer/Cram Memorandum makes clear the Internal Revenue Service's belief that, under Helmer, sold call options were not liabilities within the meaning of Section 752. The Helmer/Cram Memorandum indicates that the investors' positions were reasonable and not negligent and, therefore, the memorandum is relevant in this case.[6]

## II. The Helmer/Cram Memorandum Is Not Inadmissible Under The Hearsay Rules

The Helmer/Cram Memorandum is not hearsay. Hearsay is a statement other than one made by a declarant while testifying at trial that is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The Helmer/Cram Memorandum is being offered to demonstrate that it was reasonable for the investors in K2 Trading to

[5] To the extent the Defendant argues that Treas. Reg. § 1.752-6 eliminates the relevance of the Helmer/Cram Memorandum, the Defendant first must demonstrate that the regulations are valid and otherwise applicable, both of which are significant hurdles for the Defendant. As noted in Plaintiff's pretrial memorandum, Treas. Reg. § 1.752-6 recently was held invalid in Klamath Strategic Invest. Fund, LLC v. United States, No. 5:04-CV-278 (E.D. Tex. July 20, 2006).

[6] We note that the Defendant refuses to follow in this case its concession of the Section 752 issue in Jade Trading, LLC v. United States, No. 03-2164T. See Def.'s Supp. Mem. on Application of Coltec Indus. v. United States and Klamath Strategic Invest. Fund, LLC v. United States, at 12.

conclude that sold call options were not liabilities for purposes of Section 752 because the memorandum reflects that the Internal Revenue Service reached the same conclusion. It is not being offered to prove that, in fact, sold call options are not liabilities under Section 752; therefore, the document is not being offered to prove the truth of the matter asserted.

Moreover, statements offered against a party that are made by the party's agent or servant concerning a matter within the scope of the agency or employment during the existence of the relationship are not hearsay. Fed. R. Evid. 801(d)(2)(D). The Helmer/Cram Memorandum is being offered against the Defendant. Richard Starke, the author of the Helmer/Cram Memorandum, testified in Jade Trading, LLC v. United States, No. 03-2164T, that he was employed by the Internal Revenue Service at the time that the Helmer/Cram Memorandum was prepared and indicated that the memorandum was prepared pursuant to that employment. Transcript of Record at 748, 759-760, Jade Trading, LLC v. United States, No. 03-2164T.

Assuming arguendo that the Helmer/Cram Memorandum were hearsay, the memorandum still would be admissible under the present sense impression exception or the exception for regularly conducted activities. A present sense impression is a statement that describes or explains an event or condition made while the declarant was perceiving the event or condition or immediately thereafter. Fed. R. Evid. 803(1). A declarant's notes, which were made by hand contemporaneously with the occurrence of a meeting and later typed, qualify as a present sense impression. Cargill, Inc. v. Boag Cold Storage Warehouse, Inc., 71 F.3d 545, 555 (6th Cir. 1995) (holding that, where the plaintiff's employee took handwritten notes throughout an investigation and during

meetings and subsequently typed them, the typed notes were admissible under the present sense impression exception). Mr. Starke testified in Jade Trading, LLC v. United States, No. 03-2164T, that he made contemporaneous handwritten notes of meetings he attended. Transcript of Record at 779, Jade Trading, LLC v. United States, No. 03-2164T. Those notes were later recorded by Mr. Starke on his computer and became part of the Helmer/Cram Memorandum. Id. at 761. Such notes represent Mr. Starke's present sense impression and therefore fall within the exception to the hearsay rule and is admissible.

Records of regularly conducted activities generally include a memorandum, report, or record, in any form, of acts, events, or opinions, made at or near the time by a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to prepare the memorandum, report, or record. Fed. R. Evid. 803(6). The exception for business records can apply with respect to documents created by the government. Columbia First Bank, FSB v. United States, 58 Fed. Cl. 333, 340 n.2 (2003). The Helmer/Cram Memorandum bears an apparently pre-printed cover page that lists Internal Revenue Service personnel of varying ranks and the dates on which the memorandum was "submitted" to such personnel and the dates on which the memorandum was "cleared" by those personnel. The Helmer/Cram Memorandum also includes a "Background Information Note" that states that the Treasury Department initiated the project, provides details of the project and the interaction of Mr. Starke's division with other Internal Revenue Service divisions, and is signed by a branch chief. Those facts indicate that the Helmer/Cram Memorandum was prepared pursuant to established protocol that required the participation of several of Mr. Strake's colleagues. Accordingly, the Helmer/Cram

Memorandum is a record of regularly conducted business activities and thus falls within the exception to the hearsay rule and is admissible.

For the same reasons, Defendant's argument that the Helmer/Cram Memorandum is inadmissible hearsay within hearsay is simply erroneous. Again, the Helmer/Cram Memorandum is not being offered to prove the truth of the matter asserted and, therefore, is not hearsay. Moreover, such statements would either be admissions by a party opponent or fall within an exception to the hearsay rule and, accordingly, would be admissible. Thus, hearsay within hearsay concerns are inapplicable. See, e.g., Wilson v. Zapata Off-Shore Co., 939 F.2d 260, 271 (5th Cir. 1991) (holding that the exception for records of regularly conducted activities applies with respect to double hearsay where the source and recorder of information are acting in the regular course of business); United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir. 1982) (holding that the present sense impression exception applies where the declarant took part in a telephone call and then described the conversation to another person).

Finally, despite the government's claim to the contrary, Plaintiff has and continues to explicitly reserve the right to call Mr. Starke as a witness at trial in order to authenticate the Helmer/Cram Memorandum.[7]

## CONCLUSION

Because the Helmer/Cram Memorandum is relevant and does not constitute hearsay (or falls within at least one exception to the hearsay rule), the Defendant's motion in limine should be denied.

---

[7] In Plaintiff's original witness list included with the pretrial memorandum filed with the Court on July 28, 2006, Plaintiff expressly reserved the right to call as a witness any person who may be necessary to authenticate or otherwise resolve objections to documents set forth on Plaintiff's Exhibit List. Pl.'s Wit. List at 5.

Respectfully submitted,

s/ Mark D. Allison

Mark D. Allison
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, NY 10019-6092
Telephone: (212) 259-6866
Facsimile: (212) 259-6333
E-mail: mallison@dbllp.com

Felix B. Laughlin, Esq.
John F. Collins, Esq.

COUNSEL FOR PLAINTIFF

Dated: September 25, 2006