IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No's 04-1419 T, 05-1067 T

(Judge Mary Ellen Coster Williams)

K2 TRADING VENTURES, LLC,
NEW VISTA, LLC, TAX MATTERS PARTNER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**REPLY BY THE UNITED STATES IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFFS' NEWLY-IDENTIFIED TRIAL EXHIBITS**

The United States has moved the Court for an order excluding plaintiffs' newly-identified trial exhibits. Plaintiffs have responded, and the United States now respectfully submits this Reply in further support of its motion to exclude. Plaintiffs have also moved for an order allowing them to amend their witness list, and they have filed a combined Plaintiff's Reply to United States' Response to Motion to Amend Witness List and Plaintiff's Response to Motion by the United States to Exclude Plaintiff's New Exhibits (hereinafter "plaintiffs' brief"), in which they aptly describe the issues presented as inextricably linked. Because plaintiffs have elected to address the witness and exhibit issues together, we also make brief points below in support of our opposition to plaintiffs' motion to amend their witness list.

As explained below, the Court should grant the United States' motion and deny plaintiffs' motion. First, plaintiffs' attempt to justify their lateness by claiming surprise is implausible. Second, plaintiffs' failure to obtain this information earlier is insufficient to excuse their lateness.

## ARGUMENT

### I.

### PLAINTIFFS' PROPOSED AMENDMENTS ARE LATE AND PREJUDICIAL

At the outset, we note that plaintiffs cannot excuse their lateness by claiming the United States has consented. We stated clearly in our motion that we agreed to allow plaintiffs to modify their exhibit list after receiving our exhibit list, but we understood that any additions would be modest and would be limited to documents produced during discovery. Notably, we have not objected to seventeen exhibits which were either discussed specifically with the United States prior to their inclusion or are of the type covered by the parties' agreement about exhibit list supplementation. That category includes all produced exhibits related directly to Greg and Lori Van Boxel, taxpayers who engaged in a Spread Options Transaction and who were on the United States' witness list. Our acquiescence in the addition of these exhibits demonstrates that we are honoring our agreement. Plaintiffs propose 79 other new exhibits, numbering thousands of pages, virtually all of which relate to witnesses whom plaintiffs seek to add to their witness list, about which there was no agreement.[1] This is outside the scope of the additions the United States agreed to allow, and which it has in fact allowed.

---

[1] Plaintiffs' contention (at 5) that only a "small number" of documents has not yet been disclosed is inaccurate. As of the date of this filing, 28 of the 79 documents (35%) have not been provided, including presumably lengthy transcripts of depositions. While plaintiffs have stated orally that some of these exhibits may be dropped, they have not actually done so.

In short, there can be no question that these amendments are in fact late. Moreover, the United States is prejudiced by this lateness. Notwithstanding whether this information was properly disclosed under Rule 26 (which most of the documents were not, even if the witnesses were), its late addition greatly complicates the United States' trial preparation. The need to deal with over 10,000 pages of documents, some of which have not been yet been provided to us, imposes a substantial and unjustified burden on the United States at this late date. Additionally, if the witnesses are allowed, we may need to spend several days in western Michigan and Florida interviewing and/or deposing them, another imposition on scarce time and resources. This is true notwithstanding that the date for the trial has moved; even if the acute pressure of an impending trial is removed, the cost of dealing with a substantial number of new witnesses and documents is a high one at this stage of the trial process, when fact discovery has long since closed and final trial preparations are well under way. In short, the United States is prejudiced by these late amendments.

Because these amendments are late and prejudicial, ¶ 13 of Appendix A of this Court's rules requires that plaintiffs demonstrate a "compelling reason" for the lateness, which they have utterly failed to do. Indeed, plaintiffs' brief does not even contain the phrase "compelling reason." Instead, plaintiffs cite (at 2) precedent from other courts they claim supports their proposed amendments. The Court should disregard these cases and analyze whether plaintiffs' reasons are "compelling," as required by this Court's rules. They are not.

**II.**

**PLAINTIFFS HAD ACTUAL KNOWLEDGE AT THE TIME THEY FILED THEIR WITNESS AND EXHIBIT LISTS THAT THE UNITED STATES INTENDED TO RELY ON THE EVIDENCE FROM WHICH PLAINTIFFS NOW CLAIMS SURPRISE.**

Plaintiffs' most fundamental claim (at 1-2) seems to be that they have been forced into these amendments because they "only became aware of the need to amend" their lists at the time of the United States' "disclosure, through the lists that it filed," that it intended to rely on evidence about the activities of Sentinel, New Vista, and various members thereof (hereinafter "Sentinel") relative to other taxpayers. This claim is preposterous. In fact, plaintiffs have long had actual knowledge that the United States considered such evidence relevant and important. Facts which certainly put plaintiffs on notice include, but are not limited to—

1. The June 9, 2005 Requests for Production of Documents (attached hereto as Exhibit A) propounded by the United States to the plaintiff in this case, which sought (among other things) documents provided by Sentinel to potential clients regarding the Spread Options Transaction and copies of the complaints in any action filed against Sentinel by persons who undertook the Spread Options Transaction, providing notice that the United States was interested in pursuing those sources of information;

2. The subpoena the United States served on BDO Seidman on June 21, 2005 (attached hereto as Exhibit B), which sought communications between it and these plaintiffs regarding promotion and implementation of the Spread Options Transaction, and two depositions of BDO Seidman employees taken by the United States on May 8 and 23, 2006, each of which explored the role these plaintiffs played in promoting the Spread Options Transaction;[2]

[2] We have omitted from the subpoena, attached as Exhibit B, the attachment referenced in the body of the subpoena; that attachment lists over the course of six pages the names and taxpayers and their related entities who the United States believed, at the time it sent the subpoena, either did or may have engaged in a Spread Options Transaction.

3. The depositions taken by the United States in this case, which explored with various of the members of K2 Trading (especially, but not limited to, those of Mr. Bergmann on March 16 and April 5, 2006 and Ms. Conjeevaram on March 24, 2006) their interactions with other taxpayers;[3]

4. Repeated disclosures of various iterations of a summary chart created by the United States to summarize the Spread Options Transactions undertaken by various of Sentinel's clients, the first disclosure of which took place in this case on February 2, 2006 (cover letter attached hereto as Exhibit C); and

5. The United States' disclosure to plaintiffs in April 2006 that it had communicated with, and obtained documents from, Greg and Lori Van Boxel (cover letter attached hereto as Exhibit D).[4]

In short, while plaintiffs are free to argue (wrongly) that this evidence is not relevant, they cannot plausibly claim to be surprised that the United States not only believed it to be relevant but in fact intended from the outset to rely upon it.[5]

This fact undercuts plaintiffs' justification for not complying with ¶ 13 of Appendix A. That provision requires a party to disclose the witnesses and exhibits it intends to use at trial, including those to be offered for rebuttal. Crucially, plaintiffs claim that this evidence is necessary solely to rebut the United States' contention that New Vista's interactions with other

[3] We have not attached depositions excerpts hereto. By way of example, however, we explored with Mr. Bergmann how the relationship between BDO Seidman and Sentinel Advisors began and how BDO and Sentinel came to be copromoters of the Spread Options Transaction, as well as his meetings with prospective clients. We also asked both Mr. Bergmann and Ms. Conjeevaram about various marketing materials and correspondence between them and Sentinel's clients who undertook Spread Options Transactions. In short, plaintiffs cannot plausibly claim not to have been aware that the United States considered the activities of Sentinel and New Vista as promoters of this tax shelter, and its dealing with its clients, to be important.

[4] This non-exhaustive list does not include the fact that this issue was comprehensively argued in both pretrial papers and post-trial briefs in *Jade Trading*, about which plaintiffs' counsel has personal knowledge.

[5] We will not here address why this evidence is relevant, a point explained in our response to plaintiffs' motion *in limine*.

taxpayers are relevant. However, the facts listed above prove that plaintiffs knew the United States would make such a contention as of the time plaintiffs filed their lists. As a result, any asserted surprise cannot constitute the "compelling reason" required by ¶ 13.

Finally, while it is difficult to discern from plaintiffs' brief the precise contours of the proposed testimony and how the proposed exhibits relate to it, it seems a stretch to consider it proper rebuttal of any specific evidence the United States will offer. Plaintiffs' papers clearly focus on the Van Boxels and Bob LaVallee, one of the Van Boxels' advisors who assisted them in the Spread Options Transaction, and the associated exhibits.[6] As we have explained, the Van Boxels and LaVallee will testify as to the Van Boxels' relationship and communications with Sentinel, and their experiences with the Spread Options Transaction. Yet plaintiffs have not even contended that any of the new witnesses or exhibits can shed any light on that relationship or those communications, which means that this evidence cannot serve in any way as rebuttal of the Van Boxel/LaVallee evidence. Plaintiffs have also not explained whether or how the new witnesses and exhibits will rebut other specific evidence offered by the United States.

Therefore, the Court should reject any effort to justify these new exhibits on the basis that they are required to rebut some surprising new allegations. As explained above, the allegations at issue are not a surprise, and it is not at all clear that this evidence even rebuts them.

---

[6] *See* Plaintiffs' Brief at 5 ("[P]laintiff contacted defendant as soon as it was clear which new witnesses and the related evidence it was proposing to add *for rebuttal to the Van Boxels* and the other unrelated 'pattern' evidence testimony") (emphasis supplied).

## III.

## PLAINTIFFS' FAILURE TO OBTAIN THIS INFORMATION EARLIER DOES NOT CONSTITUTE A "COMPELLING REASON" FOR THEIR LATENESS

Plaintiffs next try to justify their lateness by contending that they were somehow unable to obtain the late-identified evidence earlier. Responding to this allegation requires reviewing briefly the facts surrounding this evidence. First, it is true, as plaintiffs state, that the United States identified in its initial Rule 26(a) disclosures that all individuals who undertook a Spread Options Transaction as individuals were "likely to have discoverable information" that the United States believed at the time it may use to support its claims or defenses.[7] Indeed, given that we have long contended that Sentinel's interactions with its customers were relevant, we could scarcely have done otherwise and fulfilled our obligations under Rule 26(a).[8] Plaintiffs therefore knew that the United States considered that class of individuals as potential witnesses.

Then, in April 2006, the United States by letter disclosed to plaintiffs the identity of a new witness, Bob LaVallee, and a series of documents obtained informally from the Van Boxels.[9] In that letter, we stated that we would have no objections to plaintiffs conducting depositions out of time, had they chosen to do so. At that point, plaintiffs were actually aware that the Van Boxels had emerged from the group of potential witnesses and had been placed very much "in play" as trial witnesses. Plaintiffs could then have issued a subpoena to the Van Boxels

---

[7] Plaintiffs reciprocated with a supplemental disclosure identifying a similar group of persons after we disclosed further information about the Van Boxels. Notably, we have not objected to these witnesses on the basis that they were not properly disclosed under Rule 26(a).

[8] As mentioned above, we also demanded in discovery copies of any complaints filed by Sentinel Spread Options Transaction clients.

[9] *See* Exhibit D.

for testimony and documents, determined what they might say, and arranged their exhibit and witness lists accordingly.[10] Instead, plaintiffs chose not to pursue any discovery, and plaintiffs should not now be heard to complain that they had neither the reason nor the ability to seek information from the Van Boxels and LaVallee prior to the time they filed their lists.

This fact also entirely eliminates plaintiffs' suggestions that the Van Boxels have wrongly insulated themselves from cross examination, and that this constitutes a basis for excluding them.[11] As should be clear, plaintiffs were free to conduct discovery from the Van Boxels, who could not have used a Michigan state court protective order[12] to abrogate RCFC 45. They chose not to do so, and they must live with the consequences of this choice. While it is not our role to defend the Van Boxels, we know of no obligation to participate in informal discovery, particularly not with regard to a party whom one has sued, as the Van Boxels have sued various of the plaintiffs. Moreover, we have no control over the Van Boxels, and any alleged misconduct on their part (of which we have seen no evidence) cannot plausibly be imputed to, or lessen the prejudice to, the United States.

---

[10] We do not know what plaintiffs mean by the claim that defendant's counsel "refused to indicate whether the Van Boxels, or any other witnesses unrelated to this case, would in fact be listed by as a witness for trial." It is true that we would not have made firm commitments about the government's witness and exhibit lists prior to the time required. This is hardly surprising, as such a commitment was not required, and so this "refusal" cannot form the basis for exclusion.

[11] Remarkably, plaintiffs actually argue (at 7) that this constitutes a basis for excluding "*any* pattern or other unrelated evidence." Nowhere do they even attempt to explain, as indeed they cannot, why alleged misconduct by the Van Boxels should prevent introduction of, for example, the testimony of BDO employee Lawrence Cohen. We note that they also make this claim (which did not appear in their opening brief) in the reply in support of their motion *in limine*. Our arguments here should apply equally in the context of plaintiffs' motion *in limine*.

[12] Plaintiffs have neither submitted this order nor quoted its provisions, leaving the Court unable to evaluate whether it could constitute a compelling reason for the failures at issue.

Second, plaintiffs' claim that the United States has enjoyed some sort of significant information advantage with respect to the Michigan witnesses is simply untrue. Defendants in that suit include Sentinel, New Vista, Ari Bergmann, and Smita Conjeevaram, all of whom are parties, literally or virtually, in this case. The United States, on the other hand, is not a party to that suit. The idea that somehow the plaintiffs here were completely unable to obtain information from a different case in which they are defendants is implausible.

Moreover, the immediate issue before the Court is whether plaintiffs had a compelling reason not to *list* these documents and witnesses, not whether they are justified in not *disclosing copies of the documents*. Plaintiffs first claim (at 6) that the protective order prevented them from "disclosing such documents or the witnesses who could testify about them," and they assert that they have not been able to obtain relief from these provisions.[13] Yet they did in fact identify both the witnesses and documents they seek to add despite the order, albeit only after our lists were filed. Thus, even assuming that the protective order constituted a valid reason not to *disclose* the documents themselves, plaintiffs' actions make clear that it did not actually bar timely *identification* of the documents pursuant to ¶ 13, undercutting any claim of a compelling reason.[14]

---

[13] With regard to the witnesses, it is simply unbelievable that, as plaintiffs claim (at 6), a protective order in a Michigan court prevented them from disclosing on a witness list the *identities* of persons who had been previously disclosed under Rule 26.

[14] It is true that we have complained that certain documents have not yet been produced, although all of these documents were also not identified in a timely fashion. Moreover, the situation with regard to production might be different if plaintiffs had timely identified the documents, and engaged in sufficient efforts to obtain them. They did no such thing, and their claimed inability to get them informally does not excuse their failure.

## CONCLUSION

For the reasons set forth above, the Court should deny plaintiffs' motion to amend their witness list and grant the United States' motion to exclude plaintiffs' new exhibits. Plaintiffs have failed to comply with ¶ 13 of Appendix A and have not demonstrated a compelling reason for this failure. They should not be permitted to prejudice the United States by adding new exhibits and witnesses only weeks before trial, notwithstanding that trial has been rescheduled.

Respectfully submitted,

s/Michael S. Raum
MICHAEL S. RAUM
Attorney of Record
U.S. Department of Justice
Tax Division
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 353-3922

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STUART J. BASSIN
Senior Litigation Counsel
JENNIFER P. WILSON
Trial Attorney
JOSEPH B. SYVERSON
Trial Attorney

November 3, 2006

s/David Gustafson
Of Counsel